All right. Good morning to counsel who are on the telephone. Good morning. Good morning. We are here in the case. We're going to now hear the case of Franco versus Barnhart by telephone conference call. As you know, the panel consists of Judge Judge Fisher, Judge Nelson and myself. And we are in the courtroom in the council. Why don't you give us your appearances, starting with the appellant's counsel? Yes, sir. My name is Henry Ernkopf. I'm representing Marissa Franco. And I am Geraldine Goldstaff, representing the commissioner of Social Security. OK, then we will start by hearing from from the appellant. As you know, both sides have 10 minutes. Go ahead, Mr. Ernkopf. Thank you, Your Honor. Ms. Franco continues to allege that her disability began in December of 1994. We acknowledge that the appeals counsel granted her benefits and set the date of February 1, 1997. That's 14 months different than what she originally alleged, or approximately 14 months. She continues to allege that substantial evidence of record supports the earlier onset date. She contends that Dr. Strausser, the treating doctor, his opinions of disability were improperly rejected by the administrative law judge. And those also of the opinion of Dr. Eick. And contrary to what the district court concluded in regard to Dr. Eick's assessment, they said it was a harmless error because he only assessed a four-month period of disability. But Dr. Eick acknowledged when he first met Ms. Franco that her condition had been severe since 1994 and had to be in bed much of that time. And when he concluded treatment four months later in April, he did not say that she was functioning better. On the contrary, he said he could only provide her with his treatments for very short periods of relief, and he was looking for additional treatments for her and recommended a lump or discography at that time. And the other physicians report that during that time period, beginning in 1994, support her being incapacitated throughout. Her treating surgeon reported in July of 94 that she continued to be fairly incapacitated. In December of 94, he continued to state that she wasn't doing very well. In January of 95, he acknowledged that she was having difficulty even getting out of bed. Who is this? This is Dr. Della Martire. He performed both surgeries on her in 90 and 92. And an anesthesiologist, who she was- Where is it that he says, what do you rely on in his statements in 1990, first that we should find it on this record that she was totally disabled? He said she was fairly incapacitated in July of 94, although she was still working at that time. I'm asking about 1990. You cited 1990, didn't you? I cited-that was at the first surgery. First surgery. So what's the report? What's the date of the report you're relying on? The first surgery? No, the date of-the 94 report, is that what you- Yes, that's on the excerpt of the record, page 97. Okay. And that 98 and 99. What does fairly incapacitated mean? She was still complaining of a lot of pain. I can't find that for the doctor. But it got to the point where she was basically bedridden come December of 1994. In when, December? In December of 1994, yes. That's based on the ER 99, where she's having exquisite exacerbation, has difficulty even getting out of bed? Yes, sir. Okay. And then she continued with treatment. She was sent for injections by a Dr. Glasner, who, on initial contact, noted that Ms. Franco had to remain prone during his stamps. And when she did stamp, favored the left lower extremity. She additionally treated with a Dr. Mooney, who said basically the same thing, that when he met with her, she was in a recumbent position. And he referred her to Dr. Eick. Who, again, could not alleviate or provide her with any long term benefit. What medical opinion are you relying on, basically, for your contention that the period of disability should be extended? Dr. Spousers? Her complaint and the treatment she's gone through since 1994, she has never had any relief from the severe pain. Her complaints have been the same since 1994 all the way through. It didn't just occur in February of 1997. Her complaints are consistent throughout, as reported to her doctor. But it was the rejection of Dr. Strouser's report that led to the shortened disability period, wasn't it? Yes. So what was wrong with what they did with Dr. Strouser's report? I believe they rejected Dr. Strouser's report, saying there was no objective findings to support his opinions of disabling conditions. And that's not necessarily all you look at when you're coming to this conclusion. Since Bonnell, that's not the standard. She's had long term treatment for her condition. She's had injections. She's taken a lot of medications. She's had consistent complaints throughout about how the only thing that relieves the pain is being in a prone position. And off of that left side. Do you think we should get any comfort as to Dr. Strouser's opinion based on its similarity to Dr. Glasner's and Dr. And isn't it a fact that out of all the doctors that she's seen, that no one has been able to diagnose a specific physical cause for the pain that she's suffering? I concur with that. But nobody seems to dispute the fact that she's in great pain. Exactly. You want to reserve the balance of your time? OK, then let's hear from the the Social Security commissioner. Good morning, your honors. This is Jeryl and Goldstaff for the commissioner. As you've noted, this is a very complex case in terms of that this lady was complaining of pain complaints for a long time, but there was very little in the way of objective findings. The board certified neurologist, Dr. Baptist, looked at the record on behalf of the appeals council when it had the case and decided on an onset date of February 1997. And substantial evidence supports the onset date. And that's what the issue is. It's not whether another onset date could reasonably have been chosen. In fact, the ALJ denied this case completely based on what your honor had just pointed out was the lack of objective findings and on the testimony of the medical advisor, the neurologist, Dr. Greenwood at the hearing. What was the what was the basis on which the appeals council chose that date? Well, it was Dr. Baptist's opinion. And his analysis of the case can be found at pages 746 to 747 of the administrative record. And he believes, based on his review, that there was a worsening in February 1997 based on the claimant's presentation at Dr. Nowak's consultative examination and the fact that she was using a walker and needed an assistive device to walk. Although Dr. Strasser, who had prescribed a manual wheelchair for her, I think back in August of 96, even said by November 1996 that she didn't really objectively need an assistive device to walk. So again, it kind of goes back to her subjective complaint. But again, the council argues that Dr. Strasser's opinions or his notes were improperly rejected. However, this court has held in the past that an ALJ or similar adjudicator can rely on the testimony or the report of non-examination of treating physicians in part to reject a treating physician's opinion, and that's the case here. Dr. Baptist and Dr. Greenwood, both their reports and testimonies support beyond that date. In addition to the fact that there were, as we've noted, very minimal objective findings, even in Dr. Strasser's notes. So the commissioner's position is, in a very complex case, that February 97 onset date is supported by substantial evidence. Two neurologists have looked at the record, and one actually felt that she could work, even through the time of the ALJ's decision, and that's why she was denied completely at that point. But later Dr. Baptist reviewed the record and felt that there were these discrete periods where there was some worsening, but that she could have worked up until February 97. And since substantial evidence in the form of a report from the board-certified neurologist who reviewed the record is present, the commissioner's findings should be upheld, even if evidence can show an earlier onset date. It's a matter of a substantial evidence test. If there are no further questions, Your Honor, the commissioner would submit. OK, thank you very much, Ms. Golseth. I just wanted to say one thing. A lot has been made in counsel's brief and so on about Dr. Strasser stating that even though she was using a walker, it wasn't necessary, and that was based on some surveillance films that are not of record. And he said there was two or three hours of surveillance films that he decided because she had driven to Ensenada and Los Angeles, and unless the cameras were mounted inside her private vehicle, I don't know. Because she testified at the hearing that most she could sit in a car for five minutes. They had a van and she could go and backslide down. So that kind of explains that. And I know without having a surveillance film. But that's all I'd like to add. OK, then we thank both counsel for your argument. This case is now submitted for decision and we'll get back to the argument of the other cases on the calendar. Thank you very much. Thank you. Thank you. OK. Next case on the argument calendar then is a returning to the cases in the order set forth on the calendar is swift versus Christian.
judges: T.G. Nelson, Tashima, Fisher